**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARSHALL S. SCHROEDER,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:10-1305** |
| **v.** | : | **(NEALON, D.J.)** |
| | | **(MANNION, M.J.)** |
| **VERIZON PENNSYLVANIA, INC.,** | : | |
| **Defendant** | : | |

### REPORT AND RECOMMENDATION[1]

Pending before the court is the defendant's motion for summary judgment, (Doc. No. 18), and the plaintiff's cross-motion for summary judgment, (Doc. No. 26). Based upon the court's review of the motions and related materials, it is recommended that the defendant's motion be granted and the plaintiff's motion be denied.

By way of relevant procedural background, on June 22, 2010, the plaintiff filed the instant *pro se* action in which he alleges that the defendant violated his rights under the Fair Credit Reporting Act, ("FCRA"), 25 U.S.C. §§1681, et seq. (Doc. No. 1). On August 18, 2010, the defendant filed an answer to the plaintiff's complaint. (Doc. No. 9).

On January 14, 2011, the defendant filed its currently pending motion for summary judgment with a statement of material facts and exhibits, (Doc.

---

[1]For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

No. 18), as well as a supporting brief, (Doc. No. 19). On February 9, 2011, the plaintiff filed a cross-motion for summary judgment, (Doc. No. 26), along with a brief in opposition to the defendant's motion for summary judgment and in support of his cross-motion for summary judgment, (Doc. No. 20), and a statement of material facts, (Doc. No. 21). On February 23, 2011, the defendant filed a reply brief in support of its motion for summary judgment. (Doc. No. 22). A brief in opposition to the plaintiff's cross-motion for summary judgment was filed by the defendant on the following day, along with a response to the plaintiff's statement of material facts with exhibits, (Doc. No. 24). A substituted exhibit was filed by the defendant on March 3, 2011. (Doc. No. 25).

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Supreme Court has stated that:

> ". . . [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving

> party has failed to make a sufficient showing on an
> essential element of her case with respect to which
> she has the burden of proof."

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. Id. The moving party can discharge that burden by "showing . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Issues of fact are genuine "only if a reasonably jury, considering the evidence presented, could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988) (citations omitted). Material facts are those which will effect the outcome of the trial under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court may not weigh the evidence nor make credibility determinations. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. Id. at 393.

If the moving party meets his initial burden, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. Id.

In his complaint, the plaintiff alleges that the defendant violated various

subsections of 15 U.S.C. §1681s-2 of the FCRA, including §1681s-2(b)[2]. In relation to this claim, the plaintiff alleges that the defendant furnished information to Consumer Reporting Agencies, ("CRAs"), that the plaintiff had an account with Verizon that was a "chargeoff or collection." According to the plaintiff, this information was "derogatory and erroneous." The plaintiff alleges that the defendant violated §1681s-2(b) by failing to report to the CRAs that the information regarding the Verizon account was incomplete or inaccurate. The plaintiff alleges that he has disputed the alleged account reported by the defendant and has requested validation from the defendant, which he has not received. He further alleges that he has disputed and requested confirmation of the alleged account with the three CRAs, Trans Union, Equifax and

---

[2] In addition, the plaintiff alleges violations of §§1681s-2(a)(1)(A), (a)(3), (a)(5) and (e)(1)(A). However, subsections (a) and (e) of §1681s-2 create no private right of action. See Huertas v. Galaxy Asset Management, — F.3d —, 2011 WL 1361568, *4 (3d Cir., Apr. 1, 2011) (finding that plaintiff could not base his claim on 15 U.S.C. §1681s-2(a) because no private right of action exists under that provision); Kibbie v. BP/Citibank, 2009 WL 2950365, *6 (M.D.Pa., Sept. 9, 2009) (Vanaskie, J.) (finding that plaintiff does not have a right to bring a private action pursuant to §1681s-2(a)) (citations omitted); Perry v. First Nat. Bank, 459 F.3d 816 (7th Cir. 2006) (finding §1681s-2(e) exempt from the private remedies provision); Marshall v. Swift River Academy, LLC, 2009 WL 1112768 (9th Cir., Apr. 27, 2009) (sections 1681n and 1681o, which provide private causes of action, do not apply to violations of either 1681s-2(a) or 1681s-2(e)); Craighead v. Nissan Motor Acceptance Corp., 2010 WL 5178831 (E.D.Va., Dec. 14, 2010) (plaintiff had no private right of action pursuant to §1681s-2(a) or §1681s-2(e)). Given this, the court will only address those claims related to §1681s-2(b), which are properly before the court. See Kibbie v. BP/Citibank, 2009 WL 2950365 at *7 (private right of action exists pursuant to §1681s-2(b)).

Experian, and the CRAs have confirmed that the account is being reported correctly. In a final attempt to resolve the matter, the plaintiff alleges that he contacted the defendant by sending a "Final Notice of Pending Lawsuit," to which the defendant failed to respond with any offer of settlement. According to the plaintiff, his credit scores have suffered as a result of the defendant's actions resulting in the defamation of his character, humiliation and denial of credit. The plaintiff is seeking compensatory and punitive damages, as well as injunctive relief.

Upon review of the defendant's motion for summary judgment, in an attempt to controvert the allegations set forth in the plaintiff's complaint and establish that it is entitled to summary judgment as a matter of law, the defendant has submitted a statement of material facts, the following of which are not in dispute[3]. At all times relevant to the plaintiff's complaint, the plaintiff was a residential telecommunications service customer of the defendant, which service was provided to the plaintiff under Account Nos. (570) 242-1305 and (570) 424-9014, with respect to both of which accounts the plaintiff was delinquent in his payment obligations.

The defendant served documents concerning the delinquency of the plaintiff's residential telecommunications service accounts with its Rule 26

---

[3]Contrary to L.R. 56.1, the plaintiff failed to file a response to the defendant's statement of material facts. As such, the defendant's facts are deemed admitted, and the facts set forth herein are taken directly from the defendant's statement.

disclosures. The account history for Account No. (570) 424-9014 shows that the debtor is the plaintiff, and that the address for the account is P.O. Box 185, Shawnee-on-Delaware, Pennsylvania 18356, which is where the account is billed. This account is delinquent in the amount of $303.47.

Verizon residential service billing to the plaintiff at P.O. Box 185, Shawnee-on-Delaware, Pennsylvania 18356, for local and long distance telephone service, and internet service, for the period March 4, 2007, through July 5, 2007, shows that payments were made to the plaintiff's account, albeit with chronic delinquency.

Verizon residential service billing to the plaintiff at P.O. Box 602, Shawnee-on-Delaware, for land line and cell phone service during the period January 4, 2007, through May 26, 2009, shows cell phone service for (570) 269-5623 and (570) 269-5622, used by the plaintiff and Zhari Schroeder, the plaintiff's wife. The residential service billing to the plaintiff at P.O. Box 602, Shawnee-on-Delaware shows this account to be chronically delinquent. The final balance unpaid on this account is $303.47.

The plaintiff is a union electrician, a member of the International Brotherhood of Electrical Workers. He graduated from college and obtained an Associates Degree in Science from the Community College of Philadelphia in 1982. The plaintiff also took classes at Jersey City College, but did not finish his Bachelor's Degree.

The plaintiff has been living at the same residential address in

6

Stroudsburg, Pennsylvania, 39 Hemlock LN, Shawnee-on-Delaware, since 2003. Currently, the plaintiff uses only cell phones, but did have land line telephone service to this address in his name. The plaintiff could not recall when he ceased having land line service to the residence. The plaintiff's wife has lived with him at the Hemlock LN address since 2003.

The plaintiff uses a Post Office Box to receive mail. He has been using P.O. Box 394, Shawnee-on-Delaware, for less than one year. Prior to this Post Office Box, the plaintiff used Post Office Box 602, Shawnee-on-Delaware, a Post Office Box he used since the purchase of the Hemlock LN residence in 2003. The plaintiff's wife has used Post Office Box 185, Shawnee-on-Delaware, since the purchase of the Hemlock LN residence in 2003.

At his deposition, the plaintiff testified that he is unsure as to whether he has been denied credit by any acts and/or omissions of the defendant. Further, he does not know whether he has been denied credit at any time since February 11, 2009. The plaintiff testified that he does not know if he has even applied for credit since February 2009. The plaintiff is unable to identify any person or entity who/which has denied him credit.

The plaintiff had different carriers for his land line service to the Hemlock LN residence over an eight year period of time. The plaintiff's wife handled the phone service to the Hemlock LN residence.

The plaintiff does not know for what period of time he had cell phone

service with the defendant. The plaintiff's wife also has cell phone service with the defendant. The plaintiff does not keep his telephone service bills; he pays them and throws them away.

The plaintiff testified that the number (570) 424-9014 sounds familiar to him. He recognized telephone number (570) 269-2623 as his cell phone number and (570) 269-5622 as one of his wife's cell phone numbers. He testified that he cannot recall whether when he changes land line or cell phone telephone service carriers his number stays the same or changes.

Viewing the residential service billing to the plaintiff at P.O. Box 185 for local and long distance telephone service and internet service, the plaintiff recognized the history as bearing his wife's Post Office Box address. He does not know whether he received billing from the defendant at this address, but testified that he has received mail at his wife's Post Office Box address. The plaintiff testified that he knows that during March 2007, a period of time covered by the residential service billing, he had cell phone service with the defendant. The plaintiff also had internet service to the Hemlock LN residence in March of 2007. The plaintiff could not recall whether the internet service provider to the Hemlock LN residence was a phone company or a cable company; he testified that it changed from time to time.

The plaintiff testified that he recognized the residential service billing to P.O. Box 602 as bearing his Post Office Box address. He could not recall when he ceased using that address, and could not recall whether or not he

8

received telephone service billing from the defendant at that address stating that he did not check the mail and did not pay the bills. He later indicated, however, that he may have paid Verizon telephone service bills.

The plaintiff testified that he prepared correspondence in response to a letter he received from Verizon asserting that he owes money in order to dispute the validity of the debt, which is the document appended to his deposition transcript as Ex. 4 . He did not receive validation of the debt from Verizon in response to this document.

The plaintiff testified that he pulls his credit reports monthly, just to check his credit. The document appended to his deposition transcript as Ex. 5 is the credit report which the plaintiff had available to him when he drafted his correspondence disputing the validity of the debt to Verizon. The plaintiff testified that, when disputing a debt, he does not deal in specifics. The plaintiff could not recall how many of the debts reflected on the credit report appended to his deposition transcript that he has disputed. There are sixteen creditors, in addition to Verizon, who are reporting derogatory information (charge offs, delinquencies, foreclosure, etc.) to the CRAs as to the plaintiff.

When the plaintiff drafted the document to dispute the validity of the debt to Verizon, he did not include any of the information included in the credit report with respect to the Verizon reported item. Further, he did not include any additional documentation. The plaintiff did not specifically indicate why he was disputing the indebtedness to Verizon reflected on the credit report, but

only indicated that he was disputing derogatory information. The plaintiff cannot ascertain whether the information being reported by Verizon on the credit report is inaccurate. The only reason that the plaintiff believes that the information being reported by Verizon on the credit report is inaccurate is that he cannot recall having the account or owing the money.

The plaintiff disputed the reporting of the indebtedness to Verizon with Experian by letter dated March 12, 2010, and mailed March 16, 2010. The letter to Experian asserts that the plaintiff disputes the reporting of the indebtedness to Verizon because he does not recall having the account. The plaintiff did not do any research at home to determine whether or not he did have the Verizon account reported by Experian before he wrote the dispute letter. The plaintiff does not recall if he inquired of his wife as to whether she recalled the Verizon account reported by Experian regarding land line or cell phone service which they used. The plaintiff did not send Experian any documents with his letter. The plaintiff received a response from Experian which indicated that Verizon verified that the reported account and information were valid. After this response, the plaintiff made no further follow up to dispute the information being reported by Verizon other than forwarding to Verizon a "notice of pending lawsuit." The plaintiff testified that he did not follow up with Experian to dispute the Verizon response that the account and information reported were valid because he received "exactly the answer I wanted to receive."

The plaintiff also sent a dispute letter to Equifax regarding the Verizon account information reported on his credit report dated March 12, 2010, and mailed March 16, 2010. This letter is identical to that sent to Experian. The plaintiff testified that, if asked the same questions about the letter to Equifax that he was asked about Experian, his answers would be identical. The plaintiff received a response from Equifax regarding his dispute of the account and information reported by Verizon, which indicates "We have researched the credit account. Account # - 570424901* The results are: Equifax verified that this [illegible] belongs to you. Additional information has been provided from the original source regarding this item." After receiving this response, the plaintiff did not follow up with Equifax regarding the substance of the information in the document.

The plaintiff also sent a dispute letter to Trans Union regarding the Verizon information reported on his credit report dated March 12, 2010, and mailed March 16, 2010. The plaintiff testified that, if asked the same questions about the letter to Trans Union that he was asked about Experian, his answers would be the same. The plaintiff received a response from Trans Union regarding his dispute of the account and information reported by Verizon, which indicated that the information regarding the Verizon account was correct. The plaintiff did not follow up with Trans Union regarding the substance of the information in the document.

The plaintiff testified that the basis of his dispute with Verizon is that "a

creditor is not able to continue to report . . . to a credit bureau negative information until they verify and validate any debt they're reporting as a charge off . . . So if I dispute a debt with Verizon . . . and they provide me with authenticated evidence that's admissible at trial, the dispute's over. They've just given me what I've asked for. If the reporter of the information does not provide the information, they have to stop reporting and they have to also report in their credit report, . . . disputed by the consumer . . . they have to report that, . . . and they're reporting that in none of the reports. . . That is the crux of this case. Whether the debt is valid or not is irrelevant." The plaintiff's only basis for his belief that the derogatory information reported by Verizon is inaccurate is that he did not receive validation of the debt from Verizon.

The defendant's facts finally provide that, upon receipt of notice of the plaintiff's dispute of the accuracy of the reporting of information by Verizon from the CRAs, the substance of which was "Not his/hers. Provide or confirm complete ID." Defendant investigated the matter and responded to the CRAs that (1) the account was a charge off; (2) that it was closed at the plaintiff's request on May 11, 2009 and in dispute pursuant to the FCRA; (3) that the amount past due was $303.00; (4) that the account was opened June 3, 2002; and (4) the account information should be modified as indicated, i.e., to reflect plaintiff's dispute. In addition, the defendant confirmed that the individual on the account and the individual disputing the account were the same. These responses to the CRAs were timely made within 90 days of

12

receipt of the March 30, 2009, notices from the CRAs.

Upon the above facts, the court turns to the plaintiff's claim that the defendant violated the provisions of §1681s-2(b). Section 1681s-2(b) provides as follows:

> (b) Duties of furnishers of information upon notice of dispute
>
> (1) In general
>
> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
>
> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--
>
> (I) modify that item of information;
>
> (ii) delete that item of information; or
>
> (iii) permanently block the reporting of that item of information.

(2) Deadline

A person shall complete all investigations, reviews, and reports required under paragraph (1) regarding information provided by the person to a consumer reporting agency, before the expiration of the period under section 1681i(a)(1) of this title within which the consumer reporting agency is required to complete actions required by that section regarding that information.

In considering claims brought pursuant to §1681s-2(b), with respect to the accuracy of information in a credit report, a furnisher of information has a duty enforceable through a private right of action only after conducting an investigation in which it finds the disputed information to be inaccurate or incomplete. Krajewski v. American Honda Finance Corp., 557 F.Supp.2d 596, 609 (E.D.Pa. 2008).

A furnisher of information is under no duty to conduct an investigation regarding a disputed entry on a consumer's credit report pursuant to §1681s-2(b) until the furnisher receives notice of the dispute from a consumer reporting agency. Krajewski, supra (citing 15 U.S.C. §§1681s-2(b)(1), 1681i(a)(2); see also, e.g., Berkery v. Beneficial Bank, 2006 WL 2273302, at *3 (E.D.Pa., Aug. 7, 2006); Leet v. Cellco P'ship, 480 F.Supp.2d 422, 428 (D.Mass. 2007)). After being notified of a dispute by a consumer reporting agency, a furnisher must "conduct an investigation with respect to the disputed information." Id. (citing 15 U.S.C. §1681s-2(b)(1)(A)). The investigation must be "a reasonable investigation" of the records of the furnisher, "to determine whether the disputed information can be verified." Id.

14

(citing Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 431 (4th Cir. 2004)).
While the question whether an investigation is reasonable "is a factual
question normally reserved for trial," "summary judgment is proper if the
reasonableness of the defendant's procedures is beyond question." Id. (citing
Westra v. Credit Control of Pinellas, 409 F.3d 825, 827 (7th Cir. 2005); see
also Farren v. RJM Acquisition Funding, LLC, 2005 WL 1799413, at *7
(E.D.Pa., July 26, 2005)).

Absent allegations of fraud, identity theft, or other issues not identifiable
from the face of its records, the furnisher need not do more than verify that
the reported information is consistent with the information in its records.
Krajewski, 557 F.Supp.2d at 610 (citing Westra, 409 F.3d at 827 ("Had Trans
Union given [defendant] notice that the nature of the dispute concerned fraud,
then perhaps a more thorough investigation would have been warranted.");
Farren, 2005 WL 1799413, at *6 ("The statute does not require . . . any data
furnisher to take extraordinary means to investigate and discover disputed
information but rather calls for a more passive investigation where the data
furnisher is determining only that the information provided to it matches the
information in its records.")). As such, whether an investigation conducted by
a furnisher in response to a notice of dispute is reasonable depends in large
part on the allegations made by the consumer and the notice of the
allegations provided to the furnisher by the consumer reporting agency.
Krajewski, 557 F.Supp.2d at 609 -610.

In the instant action, the record reflects that the defendant received a notice of dispute from the CRAs that the plaintiff reported that the Verizon account was "Not his/hers. Provide or confirm complete ID." As per the notice, the defendant conducted an investigation which allowed it to confirm the plaintiff's name and social security number on the account. Because the defendant conducted an investigation sufficient to conclude that the information provided was accurate, it cannot be held liable pursuant to §1681s-2(b). Krajewski, 557 F.Supp.2d at 608, n.9. Given this, the defendant is entitled to summary judgment with respect to the plaintiff's claim brought pursuant to 15 U.S.C. §1681s-2(b).

For the plaintiff's part, in his cross-motion for summary judgment, he provides nothing further to establish that he is entitled to judgment as a matter of law with respect to his claim pursuant to §1681s-2(b), which is the only claim raised in his complaint properly before the court[4].

The court notes that, in his cross-motion for summary judgment and supporting brief, the plaintiff attempts to raise a claim against the defendant

---

[4]The court notes that the plaintiff provides ten (10) statements of fact in support of his cross-motion for summary judgment. Statements 1 and 2 simply identify the parties. Statement 3 contains a conclusion of law. Statement 4 indicates that the defendant did not report to the CRAs that the account was in dispute when the plaintiff notified Verizon of the dispute. However, as discussed above, under §1681s-2(b), the defendant had no obligation to take action pursuant to §1681s-2(b) until notified of the dispute by the CRAs. Finally, in Statements 5 through 10, the plaintiff sets forth facts related to a claim pursuant to §1681q which, as discussed above, is not properly before the court and will not be discussed herein.

pursuant to 15 U.S.C. §1681q for obtaining information under false pretenses which was not included in his complaint. It is well settled that courts need not consider additional claims that are raised for the first time in briefing. See Treaster v. Conestoga Wood Specialties Corp., 2010 WL 2606481, *3 (M.D.Pa.) (Jones, J.) (citing Aldinger v. Spectrum Control, Inc., 207 Fed.Appx. 177, 180 n.1 (3d Cir. 2006) (district court refused to address the plaintiffs' claim that defendant violated the WARN Act by failing to give notice of termination because that issue was raised for the first time in plaintiffs' brief in opposition to summary judgment and was not pleaded in their complaint); Melrose, Inc. v. City of Pittsburgh, 2008 WL 4449687, *13 (W.D.Pa. Sept. 2008) ("It is well established that a plaintiff may not attempt to amend a complaint through a brief in opposition to a motion for summary judgment."); Johnson v. Community College of Allegheny County, 566 F.Supp.2d 405, 449 (W.D.Pa. 2008) (it is inappropriate for plaintiff to raise additional allegations for the first time in her opposition brief; thus claims are improperly before the court). Because the plaintiff did not set forth any allegations in his complaint with respect to §1681q, the court need not consider this claim herein[5].

On the basis of the foregoing, **IT IS RECOMMENDED THAT:**

**(1)**     the defendant's motion for summary judgment, **(Doc. No. 18)**, be **GRANTED**; and

---

[5]In any event, the court has reviewed the response of the defendant to the merits of the claim and finds it to be well-taken.

**(2)**     the plaintiff's cross-motion for summary judgment, **(Doc.
No. 26)**, be **DENIED**.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date:**  June 16, 2011

O:\shared\REPORTS\2010 Reports\10-1305-01.wpd